UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Rosemary E. Szczepanski</u>,
     Claimant

     v.                          Civil No. 10-cv-571-SM
                                     Opinion No. 2012 DNH 042

<u>Michael J. Astrue, Commissioner</u>,
<u>Social Security Administration</u>
     Defendant

<u>**O R D E R**</u>

Pursuant to 42 U.S.C. § 405(g), claimant, Rosemary Szczepanski, moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act").  The Commissioner objects and moves for an order affirming his decision.

**Factual Background**

I.   <u>Procedural History</u>.

On November 7, 2008, claimant filed an application for disability insurance benefits under Title II of the Act, alleging that she had been unable to work since January 1, 2006, due primarily to chronic severe back pain.  Her application was

denied and she requested a hearing before an Administrative Law
Judge ("ALJ").

On June 25, 2010, claimant, her attorney, and a vocational
expert appeared before an ALJ, who considered claimant's
application de novo.  Approximately one month later, the ALJ
issued his written decision, concluding that claimant retained
the residual functional capacity to perform light work and,
therefore, was capable of performing her past work as a
telecommunications consultant.  Accordingly, the ALJ concluded
that claimant was not disabled, as that term is defined in the
Act, at any time through the expiration of her insured status.

Claimant then sought review of the ALJ's decision by the
Decision Review Board, which was unable to complete its review
within the time period allowed.  Accordingly, the ALJ's denial of
claimant's application for benefits became the final decision of
the Commissioner, subject to judicial review.  Subsequently,
claimant filed a timely action in this court, asserting that the
ALJ's decision was not supported by substantial evidence and
seeking a judicial determination that she is disabled within the
meaning of the Act.  Claimant then filed a "Motion for Order
Reversing Decision of the Commissioner" (document no. 16).  In

response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 19).  Those motions are pending.


II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 20), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.


**Standard of Review**

I.  <u>Properly Supported Findings by the ALJ are Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C. § 405(g); <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." Consolidated Edison Co. v. NLRB, 305
U.S. 197, 229 (1938).  It is something less than the weight of
the evidence, and the possibility of drawing two inconsistent
conclusions from the evidence does not prevent an administrative
agency's finding from being supported by substantial evidence.
Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).
See also Richardson v. Perales, 402 U.S. 389, 401 (1971).
Consequently, provided the ALJ's findings are supported by
substantial evidence, the court must sustain those findings even
when there may also be substantial evidence supporting the
contrary position.  See, e.g., Tsarelka v. Secretary of Health &
Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez
Pagan v. Secretary of Health & Human Services, 819 F.2d 1, 3 (1st
Cir. 1987); Rodriguez v. Secretary of Health & Human Services,
647 F.2d 218, 222 (1st Cir. 1981).


    In making factual findings, the Commissioner must weigh and
resolve conflicts in the evidence.  See Burgos Lopez v. Secretary
of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)
(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It
is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the

[Commissioner], not the courts."  Irlanda Ortiz, 955 F.2d at 769
(citation omitted).  Accordingly, the court will give deference
to the ALJ's credibility determinations, particularly when those
determinations are supported by specific findings.  See
Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,
195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health &
Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).


II.  The Parties' Respective Burdens.

     An individual seeking Social Security disability benefits is
disabled under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The Act places a heavy initial burden on the
claimant to establish the existence of a disabling impairment.
See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v.
Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir.
1991).  To satisfy that burden, the claimant must prove, by a
preponderance of the evidence, that her impairment prevents her
from performing her former type of work.  See Gray v. Heckler,
760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F.

5

Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. § 404.1512(g).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

    (1)  whether the claimant is engaged in substantial
         gainful activity;

    (2)  whether the claimant has a severe impairment;

    (3)  whether the impairment meets or equals a listed
         impairment;

    (4)  whether the impairment prevents the claimant from
         performing past relevant work; and

    (5)  whether the impairment prevents the claimant from
         doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if

her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).


    With those principles in mind, the court reviews claimant's

motion to reverse and the Commissioner's motion to affirm his

decision.


## Discussion

I.  <u>Background - The ALJ's Findings</u>.

    In concluding that Ms. Szczepanski was not disabled within

the meaning of the Act, the ALJ properly employed the mandatory

five-step sequential evaluation process described in 20 C.F.R.

§ 404.1520.  Accordingly, he first determined that claimant had
not been engaged in substantial gainful employment since January
1, 2006.  Next, he concluded that claimant suffers from
"degenerative changes of the lumbar and cervical portions of the
spine, mild degenerative disease of the right knee and obesity."
Administrative Record ("Admin. Rec.") at 20.  Nevertheless, the
ALJ determined that those impairments, regardless of whether they
were considered alone or in combination, did not meet or
medically equal one of the impairments listed in Part 404,
Subpart P, Appendix 1.  Id. at 21.  Claimant does not challenge
any of those findings.

Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
light work.[1]  He noted, however, that claimant's RFC was limited

---

[2]    "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

by the following: "claimant is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling.  She needs to avoid even moderate exposure to hazards."  Admin. Rec. at 22. Despite those restrictions, the ALJ concluded that claimant was capable of returning to her prior job as a telecommunications consultant.  Id. at 23.

Finally, because there was some question as to whether claimant's prior employment exposed her to job-site hazards, the ALJ also considered whether there were any jobs in the national economy that she might perform.  Relying upon the testimony of a vocational expert as well as his own review of the medical record, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, she "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  Id. at 25. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, at "any time from January 1, 2006, the alleged onset date, through December 31, 2008, the date last insured."  Id.

On appeal, claimant raises two issues.  First, she says the ALJ erred in finding that her subjective complaints of pain were

not entirely credible.  Next, she says the ALJ's residual functional capacity assessment - that claimant could perform a range of light work - is not supported by substantial evidence in the record.

II.  Claimant's Credibility.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own description of those physical limitations, including her subjective complaints of pain.  See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996).  When the claimant has demonstrated that she suffers from an impairment that could reasonably be expected to produce the pain or side effects she alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit her ability to do basic work activities.

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  This includes medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by the treating or examining physicians or

>     psychologists and other persons about the symptoms and
>     how they affect the individual . . ..
>
>     In recognition of the fact that an individual's
>     symptoms can sometimes suggest a greater level of
>     severity of impairment than can be shown by the
>     objective medical evidence alone, 20 C.F.R. 404.1529(c)
>     and 416.929(c) describe the kinds of evidence,
>     including the factors below, that the adjudicator must
>     consider in addition to the objective medical evidence
>     when assessing the credibility of an individuals'
>     statements.

SSR 96-7p, <u>Policy Interpretation Ruling Titles II and XVI:</u>

<u>Evaluation of Symptoms in Disability Claims: Assessing the</u>

<u>Credibility of an Individual's Statements</u>, 1996 WL 374186 (July

2, 1996).  Those factors include the claimant's daily activities;

the location, duration, frequency, and intensity of the

claimant's pain or other symptoms; factors that precipitate and

aggravate the symptoms; the type dosage, effectiveness, and side

effects of any medication the claimant takes (or has taken) to

alleviate pain or other symptoms; and any measures other than

medication that the claimant receives (or has received) for

relief of pain or other symptoms.  <u>Id</u>.  <u>See also</u> <u>Avery</u>, 797 F.2d

at 23; 20 C.F.R. § 404.1529(c)(3).


    Here, claimant testified that she has been treated by

several physicians: a general practitioner, a neurologist, an

oncologist/hematologist, and an orthopedic surgeon.  Admin. Rec.

11

at 39.  She claimed to experience continuous, often substantial,
pain, likely as a result of a serious automobile accident in
approximately 1987.  See Amin. Rec at 40-41.  See also Id. at 244
(letter from claimant's treating physician, Dr. Conger, stating
that "If your symptoms can be blamed on anything, I'd say the
motor vehicle accident is the most likely culprit.").  She also
testified about profound fatigue, which is a side effect of her
pain medications.  But, because those medications do not
eliminate her pain, claimant's sleep is disturbed and she does
not get a full night's rest.  Instead, she takes numerous naps
during the day, of roughly 20 to 30 minutes.  Id. at 38-39, 41-
42.  As to her strength and ability to lift, claimant said she
suffers from numbness in her hands and cannot lift items weighing
more than approximately five pounds.  In fact, she testified that
she no longer buys milk by the gallon, because those containers
"almost always end up on the floor."  Id. 40.  Additionally, she
testified that, as a result of her pain - primarily in her legs
and lower back - she stumbles and/or falls to the ground at least
once every two weeks.  Id. at 37.

In reaching the conclusion that claimant's testimony
concerning the disabling nature of her impairments was not
entirely credible, the ALJ noted the following: (1) claimant's

treating physician never specifically reported that she appears
to be in severe pain, despite her alleged problems with falling,
(2) she "exhibited normal gait, normal reflexes, normal strength
and intact sensation when evaluated by Dr. Conger in November
2007;" (3) Dr. Conger "could not explain her symptoms through
testing;" (4) during an evaluation to determine her ability to
perform work-related tasks, claimant was noted to "self-limit her
performance at a frequency that exceeded normal limits;" and,
finally, (5) although claimant says she suffers from severe side-
effects from her medication, she was able to perform daily
activities like playing the piano, reading, using the internet,
and managing her own finances.  Admin. Rec. at 23.

    Considered at face value, those factors might well be
sufficient to support the ALJ's credibility finding.  In the
context provided by the record, however, they are not.  For
example, the ALJ's statement that Dr. Conger "could not explain
claimant's symptoms through testing" is not entirely consistent
with the content of the letter to which the ALJ is referring.
The ALJ's characterization of that letter, along with the
statement that Dr. Conger has not described claimant as
"appearing to have severe pain," implies that Dr. Conger doubted

whether claimant's pain is real.  But, the record is clear that he does not hold such doubts.

In the letter referenced by the ALJ, Dr. Conger reported to claimant that, "The blood work was all normal.  The neuropathy is just one of those things that came of its own accord and will stay forever now that it's there."  Admin. Rec. at 246.  There is no suggestion that Dr. Conger believed claimant was exaggerating her symptoms or that she was a malingerer.  See, e.g., Id. at 201.  See also Id. at 287 ("[P]atient has symptoms of lumbar and cervical radiculopathy, and her activities are primarily limited by pain.  She is incapable of any but sedentary work, and is limited in the amount of sitting she can do because of exacerbation of her pain when in a sitting position for extended periods of time.  Given the poor pain control, she would only be able to work for a maximum of four hours per day, and would only be able to sit for single periods of time not exceeding 30 minutes.").  Nor does there appear to be any question regarding Dr. Conger's thoughts about the origins of claimant's pain - Dr. Conger repeatedly stated that her pain was likely related to the serious automobile accident in which she was involved.  Id. at 173, 175, 177.

14

As to claimant's self-limiting behavior during physical testing, the examiner explained that possible causes of such behavior are: "(1) pain; (2) psychological issues such as fear of re-injury, anxiety, or depression; or (3) attempts to manipulate the test results." Admin. Rec. at 291. Additionally, the examiner noted that claimant did not take her pain medications prior to the test, "because it makes her 'dopey,' dizzy, & tired." Id. at 292. The ALJ did not explain why he assumed claimant's behavior was indicative of an effort to manipulate the test results, rather than the at least equally plausible explanation that she was in substantial pain because she had not taken her medications.

In concluding that claimant's allegations of pain were not entirely credible, the ALJ also pointed to her activities of daily living as evidence of her ability to perform at a higher level than she reported. Specifically, he noted that, despite claimant's assertions of substantial pain and fatigue, she can read, play the piano, use the internet, and manage her own finances. Id. at 23. Plainly, however, claimant's ability to engage in those activities is not inconsistent with her testimony, nor does it suggest that she is capable of substantial gainful activity. See, e.g., Carreau v. Apfel, 1999 WL 814272 at

15

*7 (D.N.H. Sept. 30, 1999) ("A claimant's participation in the
activities of daily living will not rebut his or her subjective
statements of pain or impairment unless there is proof that the
claimant engaged in those activities for sustained periods of
time comparable to those required to hold a light work job.")
(quoting Polidoro v. Apfel, 1999 WL 203350 at *8 (S.D.N.Y. April
12, 1999)).

    Finally, although the record contains a number of references
to steps that claimant undertook to reduce her pain - varying her
medications, physical therapy, use of a back brace, epidural
cortisone injections - the ALJ's decision does not discuss any of
them.  See generally Avery, 797 F.2d at 23; 20 C.F.R.
§ 404.1529(c).

    In short, the court cannot conclude that the ALJ adequately
considered the factors identified in Avery and SSR 96-7p in
reaching his conclusion about claimant's credibility.  While the
record may contain sufficient evidence to support the ALJ's
credibility finding, his written order does not identify or
discuss such evidence.  And, because claimant's testimony - if
fully credited - supports her asserted disability, this matter
must be remanded to the ALJ for further proceedings.

16

III. <u>Claimant's RFC for Light Work</u>.

In light of the foregoing, the court need not go into great detail discussing the ALJ's RFC determination.  It is, perhaps, sufficient to note that the ALJ's stated reasons for rejecting the opinions of Dr. Conger (claimant's treating physician) and Dr. DeFeo (an examining consultant) do not appear to be adequately supported.  Both doctors opined that claimant suffered from numerous pain-related conditions that would, in essence, preclude any substantial gainful activity.  <u>See, e.g.</u>, Admin. Rec. at 286-87, 395-98.  The ALJ's stated reasons for rejecting those opinions are neither weighty nor particularly compelling. <u>See</u> <u>Id</u>. at 23.


For example, the ALJ discounted Dr. DeFeo's opinions because: (1) claimant consulted with Dr. DeFeo shortly before her administrative hearing; and (2) Dr. DeFeo was merely an "examining physician," rather than a "treating physician." <u>Id</u>. The ALJ's decision does not explain why the timing of claimant's consultation would (or should) affect the reliability of Dr. DeFeo's professional conclusions.  And, while the ALJ chose to discount Dr. DeFeo's opinions, at least in part, because he was not a treating physician, he also discounted the opinions of claimant's treating physician - in favor of the opinions of

17

other, non-examining, non-treating physicians, without adequate
explanation.  Finally, the ALJ discounted Dr. DeFeo's opinions
because he reported that claimant walked with an "antalgic gait,"
which the ALJ said was inconsistent with "Dr. [DeFeo's] own
notation that claimant entered his office without <u>problem or
assistance</u>."  <u>Id</u>. (emphasis supplied).  Actually, Dr. DeFeo
observed that claimant entered his office without "assistance or
support."  <u>Id</u>. at 395.  That statement does not imply that she
walked without difficulty, nor does it undermine Dr. DeFeo's
subsequent observation that she walked with an antalgic gait.

In November of 2009, Dr. Conger opined that claimant's pain
rendered her incapable of performing all but sedentary, part-time
work:

> Patient has symptoms of lumbar and cervical
> radiculopathy, and her activities are primarily limited
> by pain.  She is incapable of any but sedentary work,
> and is limited in the amount of sitting she can do
> because of exacerbation of her pain when in a sitting
> position for extended periods of time.  Given the poor
> pain control, she would only be able to work for a
> maximum of four hours per day, and would only be able
> to sit for single [periods] of time not exceeding 30
> minutes.  Any work that involves bending, lifting or
> reaching on a [regular] basis is out of [the] question.
> Will try Lyrica again, which has helped with pain, but
> as with any of her pain medications, the drowsiness
> [from] medications [would] preclude working.

18

Admin. Rec. at 287.  The ALJ discounted that opinion, largely
because a non-treating, non-examining physician - Dr. Waxman -
reviewed claimant's medical records and stated, without
elaboration or record citation, that "the [diagnosis] of
peripheral neuropathy is not well supported."  Id. at 275.
Without more, Dr. Waxmans' unsupported, conclusory statement is
an insufficient basis upon which to ground a decision to
disregard the opinions of claimant's treating physician.


        There is, of course, no per se rule requiring the ALJ to
give greater weight to the opinions of a treating physician than
those of a consulting or even a non-examining physician.  See
Arroyo v. Secretary of Health & Human Services, 932 F.2d 82, 89
(1st Cir. 1991); Tremblay v. Secretary of Health & Human
Services, 676 F.2d 11, 13 (1st Cir. 1982).  But, when an ALJ
chooses to discount the opinions of a treating physician, he or
she must give "specific reasons for the weight given to the
treating source's medical opinion, supported by the evidence in
the case record, and must be sufficiently specific to make clear
to any subsequent reviewers the weight the adjudicator gave to
the treating source's medical opinion and the reasons for the
weight."  SSR 96-2p, Policy Interpretation Ruling Titles II and
XVI: Giving Controlling Weight to Treating Source Medical

<u>Opinions</u>, 1996 WL 374188 (July 2, 1996).  <u>See also</u> 20 C.F.R. §

404.1527(d)(2).


While there may well be adequate reasons in the record to

support the ALJ's decision to discount the opinions of Dr. Conger

and Dr. DeFeo, his written decision does not identify them.  He

should, then, be given an opportunity to reassess his evaluation

based upon a clearer focus on the content of the record.


## Conclusion

For the foregoing reasons, claimant's motion for order

reversing the decision of the Commissioner (document no. 16) is

granted to the extent she seeks a remand to the ALJ for further

proceedings.  The Commissioner's motion for order affirming his

decision (document no. 19) is denied.


Pursuant to sentence four of 42 U.S.C. § 405(g), this matter

is hereby remanded to the ALJ for further proceedings consistent

with this order.  The Clerk of Court shall enter judgment in

accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
District Judge

February 9, 2012

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.